## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| UMAR BURLEY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. ELH-18-1743 |
| BALTIMORE POLICE DEPARTMENT, *et al*., | |
| Defendants. | |

**PLAINTIFFS UMAR BURLEY AND BRENT MATTHEWS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS BALTIMORE POLICE DEPARTMENT AND DEAN PALMERE'S MOTION TO DISMISS [ECF No. 29] AND DEFENDANTS GUINN, GLADSTONE, WILLARD, KNOERLEIN, AND FRIES' <u>MOTION TO DISMISS [ECF No. 33]</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................................... 2

III.   ARGUMENT .......................................................................................................... 5

    A.     Defendants conflate the distinct § 1983 fabrication of evidence claim and the
        § 1983 withholding of evidence claim asserted in Count I ................................... 6

    B.     Plaintiffs' § 1983 claims are timely. ..................................................................... 7

        1.     Because Plaintiffs' § 1983 claim based on fabrication of evidence is
            most analogous to the common-law tort of malicious prosecution,
            the limitations period did not begin to run until Plaintiffs' federal
            convictions were vacated. ........................................................................... 8

        2.     Plaintiffs' § 1983 claim for malicious prosecution incorporates a
            "favorable termination" requirement and thus is timely. .......................... 13

        3.     Because Plaintiffs' remaining federal claims derive from the
            underlying § 1983 claims, they are also timely. ....................................... 14

    C.     Defendants have waived their argument that Plaintiffs' state-law claims are
        time-barred. .......................................................................................................... 15

    D.     Plaintiffs have properly stated claims for malicious prosecution, failure to
        intervene, and supervisory liability ...................................................................... 15

        1.     By alleging that Defendants Guinn, Gladstone, and Willard participated
            in the planting of heroin in Mr. Burley's car, Plaintiffs have properly
            stated a claim for malicious prosecution against those Defendants ........... 15

        2.     Defendants mistakenly seek to add a physical presence requirement
            to a § 1983 claim for failure to intervene. ................................................ 17

        3.     Because Defendants misunderstand Plaintiffs' claims for supervisory
            liability as asserting a theory of respondeat superior, their attempt at
            dismissal fails. ........................................................................................... 17

    E.     Plaintiffs have properly stated a § 1983 claim based on a *Brady* violation. ......... 19

        1.     In seeking to dismiss Plaintiffs' § 1983 *Brady* claim, Defendants
            refuse to accept the facts alleged in the complaint as true. ....................... 19

2.    Defendants' sweeping contention that *Brady* does not apply before trial conflicts with Fourth Circuit precedent and would eviscerate a fundamental due process protection for criminal defendants. .................. 20

    a.    Defendants ignore the Fourth Circuit's decision in *Fisher*, which recognizes that individuals have due process rights during the plea stage and thus supports Plaintiffs' claim. ...................................... 20

    b.    Defendants ignore Supreme Court decisions recognizing that criminal defendants' due process and trial rights are not limited to trial. ............................................................................................. 23

    c.    Defendants' reliance on *Ruiz* and *Moussaoui* is misplaced. ......... 25

    d.    The obligations that prosecutors owe to criminal defendants— including specifically to Mr. Burley and Mr. Matthews—further confirms the availability of Plaintiffs' claim. .............................. 27

F.    Dismissal of Plaintiffs' indemnification claims would be premature and wasteful of judicial resources. ........................................................................................... 29

IV.    CONCLUSION .............................................................................................................. 32

# TABLE OF AUTHORITIES

## Cases

*Albright v. Oliver*,
   510 U.S. 266 (1994) ........................................................................................................ 22

*Arkansas Game & Fish Comm'n v. United States*,
   568 U.S. 23 (2012) .......................................................................................................... 26

*Baltimore Police Dep't. v. Cherkes*,
   140 Md. App. 282 (2011) ................................................................................................ 29

*Bost v. Wexford Health Sources, Inc.*,
   Civil Action No. ELH-15-3278 (D. Md. July 23, 2018) ................................................. 32

*Bradford v. Scherschligt*,
   803 F.3d 382 (9th Cir. 2015) ............................................................................................ 9

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................................... 22, 23, 24

*Brady v. United States*,
   397 U.S. 742 (1970) .................................................................................................. passim

*Brady v. United States*, 397 U.S. 741 (1970) ............................................................................. 22

*Brooks v. City of Winston-Salem, N.C.*,
   85 F.3d 178 (4th Cir. 1996) ............................................................................................ 13

*Buffey v. Ballard*,
   236 W. Va. 509 (2015) .............................................................................................. 25, 26

*Burgess v. Baltimore Police Dep't*,
   300 F. Supp. 3d 696 (D. Md. 2018) .................................................................................. 6

*Castellano v. Fragozo*,
   352 F.3d 939 (5th Cir. 2003) ............................................................................................ 9

*Childers Oil Co. v. Exxon Corp.*,
   960 F.2d 1265 (4th Cir. 1992) ........................................................................................ 11

*Day v. Robbins*,
   179 F. Supp. 3d 538 (D. Md. 2016) ................................................................................ 29

*DiPino v. Davis*,
   354 Md. 18 (1999) ........................................................................................................... 16

*Dunigan v. Purkey*,
   Civil Action No. 2:17cv40, 2018 WL 4087564 (N.D.W. Va. July 25, 2018) ................ 11

*Edokobi v. U.S. Gen. Servs. Admin.*,
   Civil Action Nos. TDC-17-2469, TDC-17-2825, TDC-18-0557, 2018 WL 4639102 (D. Md.
   Sept. 27, 2018) .......................................................................................................... 10, 11

*Eriline Co. S.A. v. Johnson*,
   440 F.3d 648 (4th Cir. 2006) ............................................................ 15

*Evans v. Chalmers*,
   703 F.3d 636 (4th Cir. 2012) ............................................................ 14

*Ferrara v. United States*,
   456 F.3d 278 (1st Cir. 2006) ....................................................... 22, 23

*Floyd v. Attorney Gen.*,
   722 F. App'x 112 (3d Cir. 2018) ........................................................ 9

*Goodman v. Praxair, Inc.*,
   494 F.3d 458 (4th Cir. 2007) ......................................................... 8, 15

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ........................................................................ 11

*Heck v. Humphrey*,
   512 U.S. 477 (2007) ................................................................. passim

*Heron v. Strader*,
   361 Md. 258 (2000) ........................................................................ 16

*Home Exterminating Co., Inc. v. Zurich-American Ins. Group*,
   921 F. Supp. 3d 318 (D. Md. 1996) .................................................. 32

*Hoskins v. Knox Cty.*,
   No. CV 17-84-DLB-HAI, 2018 WL 1352163 (E.D. Ky. Mar. 15, 2018) ............... 15

*Johnson v. Francis*,
   239 Md. App. 530 (2018) ................................................................. 29

*Kemp v. Harris*,
   No. WDQ-08-793, 2008 WL 11363697 (D. Md. Nov. 12, 2008) ................... 19

*Kinder v. White*,
   609 F. App'x 126 (4th Cir. 2015) ...................................................... 15

*King v. Harwood*,
   852 F.3d 568 (6th Cir. 2017) ............................................................. 9

*Lafler v. Cooper*,
   566 U.S. 156 (2012) .................................................................. 24, 25

*Lambert v. Williams*,
   223 F.3d 257 (4th Cir. 2000) ........................................................ 13, 14

*Lewis v. Clark*,
   534 F. Supp. 714 (D. Md. 1982) ..................................................... 10, 12

*Lincoln Prop. Co. v. Roche*,
   546 U.S. 81 (2005) .......................................................................... 14

*Manuel v. City of Joliet*,
   137 S. Ct. 911 (2017) ...................................................................... 13

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,*
    674 F.3d 369 (4th Cir. 2012) ................................................................. 15

*McCann v. Mangialardi,*
    337 F.3d 782 (7th Cir. 2003) ................................................................. 26

*McDonough v. Smith,*
    898 F.3d 259 (2d Cir. 2018) .................................................................... 9

*Mills v. Barnard,*
    869 F.3d 473 (6th Cir. 2017) ............................................................... 7, 9

*Missouri v. Frye,*
    566 U.S. 134 (2012) ............................................................................... 27

*Mondragon v. Thompson,*
    519 F.3d 1078 (10th Cir. 2008) ............................................................... 9

*Montgomery Ward v. Wilson,*
    339 Md. 701 (1995) ................................................................................ 16

*Owens v. Baltimore City State's Attorney's Office,*
    767 F.3d 379 (4th Cir. 2014) ....................................................... passim

*Potts v. Hendrix,*
    16-cv-03187-TDC (D. Md. Dec. 7, 2018) .............................................. 31

*Poventud v. City of New York,*
    750 F.3d 121 (2d Cir. 2014) .................................................................. 23

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973) ............................................................................... 11

*Randall v. Prince George's Cty., Md.,*
    302 F.3d 188 (4th Cir. 2002) .......................................................... 17, 18

*Ricks v. Pauch,*
    322 F. Supp. 813 (E.D. Mich. 2018) ...................................................... 7

*Roberts v. Baltimore City Police Dep't,*
    Case No. 18-cv-01940-CCB (D. Md. Nov. 21, 2018) ......................... 31

*Rubio v. Cnty. of Suffolk,*
    No. 01-CV-1806 (TCP), 2007 WL 2993830 (E.D.N.Y. Oct. 9, 2007) ................ 31

*Ruiz v. United States,*
    536 U.S. 622 (2002) ................................................................... 25, 26, 28

*Sanchez v. United States,*
    50 F.3d 1448 (9th Cir. 1995) ................................................................ 22

*Sanders-El v. Rohde,*
    778 F.3d 556 (7th Cir. 2015) .................................................................. 6

*Shaw v. Stroud,*
    13 F.3d 791 (4th Cir. 1994) .................................................................. 18

*Slakan v. Porter*,
    737 F.2d 368 (4th Cir. 1984) ..................................................................................... 18

*Starks v. City of Waukegan*,
    946 F. Supp. 2d 780 (N.D. Ill. 2013) ......................................................................... 15

*State v. Huebler*,
    128 Nev. 192 (2012) ................................................................................................... 25

*Strickler v. Greene*,
    527 U.S. 263 (1999) .................................................................................................... 27

*Triestman v. Probst*,
    897 F. Supp. 48 (N.D.N.Y. 1995) .............................................................................. 10

*United States v. Barfield*,
    969 F.2d 1554 (4th Cir. 1992) ................................................................................... 24

*United States v. Burley, et al.*,
    Case No. 14-CR-00412-CCB (D. Md) ....................................................................... 27

*United States v. Cureton*,
    Docket No. 3:14-cr-00229-MOC, 2016 WL 755648 (W.D.N.C. Feb. 25, 2016) ..................... 25

*United States v. Fisher*,
    711 F.3d 460 (4th Cir. 2013) ............................................................................... passim

*United States v. Moussaoui*,
    591 F.3d 263 (4th Cir. 2010) ............................................................................... 25, 26

*Wallace v. Keto*,
    549 U.S. 384 (2007) ............................................................................................. passim

*Washington v. Wilmore*,
    407 F.3d 274 (4th Cir. 2005) ....................................................................................... 6

*Wilkins v. Montgomery*,
    751 F.3d 214 (4th Cir. 2014) ..................................................................................... 18

*Williams v. Prince George's Cty.*,
    112 Md. App. 526 (1996) ............................................................................................ 30

*Ying Li v. City of New York*,
    246 F. Supp. 3d 578 (S.D.N.Y. 2017) .................................................................. 12, 24

**Statutes**

42 U.S.C. § 1983 ............................................................................................................. passim

42 U.S.C. § 1988 ....................................................................................................................... 7

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ............................................................................... 7

Md. Code Ann., Cts. & Jud. Proc. § 5-302 ............................................................................. 29

Md. Code Ann., Cts. & Jud. Proc. § 5-303 ............................................................................. 29

Md. Code Ann., Cts. & Jud. Proc. § 5-304 ............................................................................. 31

## Rules

Fed. R. Civ. P. 8 ................................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 8

## Other Authorities

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 09-454 (2009) ............................. 27

Dept. of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online,
    Table 5.22.2009, available at  http://www.albany.edu/sourcebook/pdf/t5222009.pdf ............ 24

National Registry of Exonerations, *Innocents Who Plead Guilty*, available at
    http://www.law.umich.edu/special/exoneration/Documents/NRE.Guilty.Plea. Article1.pdf ... 28

*Prosser & Keeton on Torts* § 119 (5th ed. 1984) ......................................................................... 8

*The Unexonerated: Factually Innocent Defendants Who Plead Guilty*,
    100 Cornell L. Rev. 157 (2014) ............................................................................................. 28

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**
(Northern Division)

| | |
|---|---|
| UMAR BURLEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BALTIMORE POLICE DEPARTMENT, *et al.*, <br><br> Defendants. | Civil Action No. ELH-18-1743 |

**PLAINTIFFS UMAR BURLEY AND BRENT MATTHEWS' CONSOLIDATED
RESPONSE IN OPPOSITION TO DEFENDANTS BALTIMORE POLICE
DEPARTMENT AND DEAN PALMERE'S MOTION TO DISMISS [ECF No. 29] AND
DEFENDANTS GUINN, GLADSTONE, WILLARD, KNOERLEIN, AND FRIES'
MOTION TO DISMISS [ECF No. 33]**

## I.   INTRODUCTION

Plaintiffs Umar Burley and Brent Matthews spent a combined nine and a half years in prison (and Mr. Matthews spent an additional three years under supervision) because plainclothes officers of the Baltimore Police Department planted heroin in Mr. Burley's car.  The fact that BPD officers planted drugs to frame two innocent men has been admitted by one of the officers, who himself is in prison after pleading guilty to federal charges.  Mr. Burley and Mr. Matthews, fully exonerated of the drug charges, have filed this lawsuit against the officers who planted the heroin, the supervisors who stood idly by, and the Department that ignored misconduct by its plainclothes officers for far too long.

Defendants now seek dismissal of nearly all of Plaintiffs' claims, often in a conclusory fashion.  They principally argue that Mr. Burley's and Mr. Matthews' claims are untimely

because they should have filed suit while incarcerated; have not sufficiently stated claims; and lacked due process rights before trial. In so doing, however, Defendants confuse Plaintiffs' § 1983 claims and ignore or refuse to accept as true key facts alleged in the operative complaint. They also overlook Fourth Circuit and Supreme Court decisions that speak directly to the issues at hand. Because Defendants have neither analyzed the alleged facts nor supplied legal authority to justify dismissal, especially at this early stage, Mr. Burley and Mr. Matthews respectfully request that the Court deny the motions and allow them the opportunity to vindicate their civil rights.

## II. STATEMENT OF FACTS

Baltimore Police Department officers planted heroin in Mr. Burley's car, leading directly to Mr. Burley's and Mr. Matthews' wrongful convictions and terms of imprisonment.

On April 28, 2010, three Baltimore Police Department officers, Wayne Jenkins, Ryan Guinn, and Sean Suiter, stopped Mr. Burley and Mr. Matthews, who were on their way to support family members at a hearing. Second Am. Compl., ECF No. 23, ¶¶ 212, 213. The officers, wearing plainclothes and without identification, jumped out of unmarked vehicles wearing masks and displaying guns. *Id.* ¶¶ 218, 219. Fearing that they were being robbed, Mr. Burley maneuvered his car around the officers, and a chase ensued. *Id.* ¶¶ 221, 222. At no time did the officers activate police sirens or lights, or do anything to convey that they were police officers. *Id.* ¶ 222.

During the chase, Mr. Burley struck another vehicle, and the other driver died. *Id.* ¶ 223. The officers arrived on the scene, searched Messrs. Burley and Matthews and Mr. Burley's vehicle, and found no contraband. *Id.* ¶ 225. Along with Officers Jenkins, Guinn, and Suiter

(who had chased Messrs. Burley and Matthews), two other BPD officers, Officer Gladstone and Sergeant Willard, were present at the scene.  *Id.* ¶ 228.

To justify their earlier misconduct, these officers planted approximately 32 grams of heroin on the floor of Mr. Burley's car.  *Id.* ¶¶ 227, 228.  Despite knowing that they had planted heroin in Mr. Burley's car, Officers Jenkins, Gladstone, and Guinn (the "Officer Defendants"), together with Sergeant Willard, intentionally withheld this information from others and used it to arrest Mr. Burley and Mr. Matthews.  *Id.* ¶ 231.

Later that day, Officer Jenkins authored a statement of probable cause in which he falsely claimed that the officers had recovered "32 individually wrapped pieces of plastic containing a tan powder substance each weighing approximately one gram (all of which was suspected high purity heroin)" from Mr. Burley's car.  *Id.* ¶ 234.  As a result of Defendants' misconduct, federal prosecutors charged Mr. Burley and Mr. Matthews with conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin.  *Id.* ¶¶ 238, 242.  State prosecutors separately charged Mr. Burley with vehicular manslaughter.  *Id.* ¶ 239.

Faced with threats of longer sentences by state and federal prosecutors, and without knowledge that the officers had planted the drugs and their related misconduct, on or about June 9, 2011, Messrs. Burley and Matthews pleaded guilty to possession with intent to distribute heroin.  *Id.* ¶¶ 242, 243.  Likewise, in August 2011, Mr. Burley pleaded guilty to the vehicular manslaughter charge.  *Id.*  Mr. Matthews received a 15-year sentence for the federal drug charge, to run concurrently with the 10-year state sentence for vehicular manslaughter.  *Id.* ¶ 244.  Mr. Matthews received a 46-month sentence for the heroin the BPD officers planted in Mr. Burley's car.  *Id.* ¶ 245.

3

Six years later, in June 2017, a federal grand jury indicted Mr. Jenkins and other BPD officers for activity very similar to what they admitted doing here. *Id.* ¶ 249. Only when federal prosecutors interviewed Mr. Burley about his arrest did he, and later Mr. Matthews, learn that BPD officers had planted heroin in Mr. Burley's car and falsified the statement of probable cause used to justify their arrest and prosecution. *Id.* ¶¶ 250–252.

The officers' misconduct related to Mr. Burley and Mr. Matthews was part of a pattern and culture of lawlessness within BPD's plainclothes units. *Id.* ¶¶ 36–71. For many years before the officers planted heroin in Mr. Burley's car, the BPD deployed elite units comprised of plainclothes officers that operated with broad authority but little accountability, *id.*, like the Violent Crimes Impact Division, of which the officers were members at the relevant times, *id.* ¶¶ 56, 218. The lawlessness of those units was exposed time and again but was tolerated and condoned by both their supervisors and the BPD, so long as the plainclothes units were perceived as producing results. *Id.* ¶¶ 181–210. The officers' misconduct in this case resulted from the deliberate indifference of their supervisors, including Dean Palmere, Richard Willard, William Knoerlein, and Michael Fries, who, despite knowing that plainclothes officers posed an unreasonable risk to citizens, condoned their misconduct by failing to supervise or correct their behavior. *Id.* ¶¶ 102–153.

On January 5, 2018, Mr. Jenkins pleaded guilty to racketeering conspiracy, racketeering, two counts of Hobbs Act Robbery, falsification of records in a federal investigation, and four counts of deprivation of rights under color of law. *Id.* ¶ 99. In his plea agreement, Mr. Jenkins admitted that heroin was planted in Mr. Burley's car on April 28, 2010, *id.*, and as reflected in the statement of facts accompanying his plea, he implicated unnamed officers, *id.* ¶ 100.

Having determined that BPD officers planted the heroin in Mr. Burley's car, the United States moved to vacate Messrs. Burley's and Matthews' convictions. *Id.* ¶¶ 253, 257.  On December 19, 2017, Judge Bennett granted the government's motion and vacated Messrs. Burley's and Matthews' federal drug convictions. *Id.* ¶ 258.  On April 9, 2018, the Circuit Court for Baltimore City granted a joint motion to withdraw Mr. Burley's guilty plea to the vehicular manslaughter conviction. *Id.* ¶ 259.

In the Second Amended Complaint, Plaintiffs name the Baltimore Police Department, Dean Palmere, Wayne Jenkins, Ryann Guinn, Keith Gladstone, Richard Willard, William Knoerlein, and Michael Fries as defendants.[1]  Defendants BPD and Palmere moved to dismiss ("Defs. BPD & Palmere's Mot.").  ECF No. 29.  Defendants Guinn, Gladstone, Willard, Knoerlein, and Fries filed their own motion to dismiss that in large part incorporates the other motion ("Def. Guinn's Mot.").  ECF No. 33.

## III.   ARGUMENT

Defendants seek to dismiss each of Plaintiffs' federal § 1983 claims as barred by the statute of limitations, but those claims are timely because they did not accrue until Plaintiffs' criminal proceedings fully resolved when their convictions were vacated in December 2017.  While some Defendants assert that all of the state-law claims are time-barred, they provide no analysis and thus have waived any argument as to timeliness.

Defendants' remaining attempts at dismissal fare no better.  In seeking to dismiss those claims on the basis that Plaintiffs failed to adequately state a claim, Defendants either omit or misstate the elements of Plaintiffs' claims for malicious prosecution, failure to intervene, and supervisory liability.  Accepting the allegations as true and drawing all inferences in Plaintiffs'

---

[1] Defendant Jenkins answered the First Amended Complaint.  ECF No. 20.

favor, as required at this stage, Plaintiffs have adequately pleaded each cause of action.

Defendants' subsequent assertion that Plaintiffs lacked *Brady* due process rights before trial

ignores binding precedent and would eradicate a key due process protection for criminal

defendants.  Lastly, Defendants seek dismissal of Plaintiffs' two indemnification claims, but that

is inappropriate and would be inefficient given the overwhelming likelihood of a liability finding

in Plaintiffs' favor and BPD's status as a defendant on the *Monell* claim.

### A.  Defendants conflate the distinct § 1983 fabrication of evidence claim and the § 1983 withholding of evidence claim asserted in Count I.

At the outset, it is important to accurately catalogue Plaintiffs' two distinct § 1983 claims

as set forth in Count I: (1) that the Officer Defendants and Sergeant Willard violated Plaintiffs'

due process rights under the Fifth and Fourteenth Amendments by fabricating evidence against

Plaintiffs and (2) those same Defendants violated Plaintiffs' due process rights by violating their

obligations to disclose exculpatory evidence.

Defendants BPD and Palmere, relying solely on a Seventh Circuit decision, argue that

"the Court should not permit Plaintiffs to recast their fabrication of evidence claim as a *Brady*

claim."  Defs. BPD & Palmere's Mot. at 13 (citing *Sanders-El v. Rohde*, 778 F.3d 556, 561 (7th

Cir. 2015)).  The Fourth Circuit, however, rejected a version of that argument in *Washington v.

Wilmore*, 407 F.3d 274 (4th Cir. 2005).  There, the defendant complained that the plaintiff's

fabrication of evidence was "nothing more than a clever rephrasing" of a *Brady* claim.  *Id.* at

282.  In rejecting that argument, the Fourth Circuit made clear that the "failure to disclose

exculpatory evidence"—*i.e.*, a § 1983 claim based on a *Brady* violation—is distinct from the

"creation of false evidence"—*i.e.*, a § 1983 claim based on the fabrication of evidence.  *Id.*; *see

also Burgess v. Baltimore Police Dep't*, 300 F. Supp. 3d 696, 709–711 (D. Md. 2018) (analyzing

plaintiff's *Brady*-based withholding and fabrication claims separately, despite factual overlap between claims).[2]  So too should this Court recognize Plaintiffs' distinct claims.

Plaintiffs separately bring a § 1983 malicious prosecution against the Officer Defendants and Defendant Willard (Count II).  Plaintiffs also bring the following derivative § 1983 claims: failure to intervene against the Officer Defendants and Defendant Willard (Count III); conspiracy to deprive constitutional rights against those same Defendants (Count IV); supervisory liability against Defendants Willard, Knoerlein, Fries, and Palmere (Count V); and *Monell* liability against the BPD (Count VI).

### B.  Plaintiffs' § 1983 claims are timely.

The parties agree that, because § 1983 does not have a statute of limitations, courts look to the statute of limitations of the most analogous state-law cause of action to determine timeliness.  *See Heck v. Humphrey*, 512 U.S. 477, 484 (2007); 42 U.S.C. § 1988(a).  For § 1983 suits, that "cause of action is a personal-injury suit," *id.*, which affords plaintiffs in Maryland three years to file suit, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  The parties disagree, however, as to when this limitations period began to run for the various § 1983 counts.  In *Wallace v. Keto*, the Supreme Court explained that the "standard rule" for accrual occurs "when the plaintiff has 'a complete and present cause of action.'"  549 U.S. 384, 388 (2007) (quotation omitted).  If, however, "the common law provides a 'distinctive rule' for determining when the limitations period for a particular tort begins, a court must 'consider[]' this 'refinement' in

---

[2] *See also Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017) (finding error where district court combined fabrication claim and withholding claim into one and explaining that two claims should be analyzed separately "as the claims have different elements, most notably, that one involves the suppression of favorable evidence and the other the manufacture of damaging evidence"); *Ricks v. Pauch*, 322 F. Supp. 813, 826 (E.D. Mich. 2018) ("[T]he wrong in the withholding claim is the suppression of exonerating evidence [the bullets removed from Bennett's body] that the [ballistics] did not match.  The wrong in the fabrication claim is producing a false report [regarding the ballistics].").

determining when the limitations period for the plaintiff's analogous claim under § 1983 should commence." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 389 (4th Cir. 2014) (quoting *Wallace*, 549 U.S. at 388).

Ordinarily, statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the defendant bears the burden of establishing it, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). It "follows, therefore, that a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that plaintiff's claim is time-barred." *Id.*

Each of Plaintiffs' § 1983 claims is timely, as the limitations periods did not begin to run until the criminal proceedings against Mr. Burley and Mr. Matthews fully resolved in their favor.

> **1. Because Plaintiffs' § 1983 claim based on fabrication of evidence is most analogous to the common-law tort of malicious prosecution, the limitations period did not begin to run until Plaintiffs' federal convictions were vacated.**

Plaintiffs claim in Count I that the Officer Defendants and Defendant Willard violated their due process rights in two distinct ways: (1) by suppressing exculpatory evidence and (2) by fabricating evidence by planting heroin in Mr. Burley's car and falsifying reports. Defendants do not contest that the *Brady* portion of Count I is timely, as the Fourth Circuit settled that issue in *Owens v. Baltimore City State's Attorney's Office*. There, Mr. Owens contended that "the Appellees violated due process by maintaining proceedings against him without disclosing exculpatory evidence [and thus] malicious prosecution provides the closest analogy to his § 1983 claims." 767 F.3d at 390. The Fourth Circuit agreed, noting that for claims of malicious prosecution, the limitations period does not start until criminal proceedings against a civil plaintiff are "resolved in his [or her] favor." *Id.* (citing *Prosser & Keeton on Torts* § 119 (5th ed. 1984)). The limitations period for Mr. Owens' claim thus did not start when he was granted a

new trial, but when the criminal proceedings fully resolved in his favor—in his case, when the State of Maryland entered a *nolle prosequi*.[3]  *Id.*

The Court need look no further than the logic and holding of *Owens*—which Defendants fail to engage, much less dispute—to find the § 1983 fabrication claim timely.  Plaintiffs' fabrication claim, which centers on the planting of heroin and falsification of police reports, is most analogous to the tort of malicious prosecution.  Here, federal prosecutors would not have had a federal drug case against Plaintiffs if Defendants had not planted drugs in Mr. Burley's car.  Just as with Mr. Owens' § 1983 claim based on *Brady* violations, because Plaintiffs "contend that [Defendants] violated due process by [initiating] and maintaining proceedings," "malicious prosecution provides the closest analogy to his § 1983 claims."  *Id.*  Therefore, as with Mr. Owens' *Brady* claim, the limitations period for Plaintiffs' fabrication claim did not begin to run until the criminal proceedings fully terminated in their favor.

Not only does Defendants BPD and Palmere's Motion ignore the logic of *Owens*, it fails to conduct the correct limitations analysis for the fabrication claim.  Their motion skips the critical first step of identifying the common-law tort most analogous to the § 1983 claim.  It simply assumes, without analysis, that the standard rule for accrual applies.  And it offers neither

---

[3] Five out of six Circuits that have addressed this issue have held that the statute of limitations for a § 1983 claim based on fabrication of evidence in criminal proceedings begins to run when those proceedings resolve in the defendant's favor.  *See Floyd v. Attorney Gen.*, 722 F. App'x 112, 114 (3d Cir. 2018) (per curiam); *Castellano v. Fragozo*, 352 F.3d 939, 959–60 (5th Cir. 2003) (en banc); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citing *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017)); *Bradford v. Scherschligt*, 803 F.3d 382, 387–389 (9th Cir. 2015); *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008).  Each of these five Circuits concluded that malicious prosecution is the common-law tort most analogous to a fabrication claim.  Only the Second Circuit's decision found otherwise, which, as Defendants note, the Supreme Court will review this term.  *See McDonough v. Smith*, 898 F.3d 259 (2d Cir. 2018), *cert granted*, No. 18-485, 2019 WL 166879.  The Second Circuit's outlier decision turns on the fact that the plaintiff was "never convicted," so *Heck*'s deferred accrual rule was not "'called into play.'"  *Id.* at 269 (quoting *Wallace*, 549 U.S. at 393).  Of course, Mr. Burley and Mr. Matthews were convicted.

support nor explanation for its assertion that Plaintiffs' *Brady* and fabrication of evidence claims—both of which arise under the Fifth and Fourteenth Amendments' guarantees of due process—have distinct accrual dates. *See Owens*, 767 F.3d at 392 (noting "strong judicial policy against the creation of conflicting resolutions arising out of the same or identical transaction" and identifying same accrual date for malicious prosecution and *Brady* claims).

Rather than grapple with relevant Supreme Court and Fourth Circuit precedent, Defendants rely on two inapposite district court opinions. The first, *Lewis v. Clark*, 534 F. Supp. 714 (D. Md. 1982), which was issued nearly 37 years ago and has been cited only a handful of times since, long predates the Supreme Court's *Heck* and *Wallace* decisions, which established the analytical framework for evaluating the timeliness of § 1983 claims, as well as the Fourth Circuit's recent opinion in *Owens* applying that framework. *Lewis* concerns the "standard rule" of accrual; it says nothing of identifying whether a "distinctive rule" for accrual exists. And it centers on false statements made in a search warrant, a distinct claim that generally accrues on the date of the search. *See discussion infra*.

The second case is an unpublished opinion dismissing a *pro se* action, *Edokobi v. U.S. Gen. Servs. Admin.*, Civil Action Nos. TDC-17-2469, TDC-17-2825, TDC-18-0557, 2018 WL 4639102 (D. Md. Sept. 27, 2018). *Edokobi* itself relies on *Lewis*, and so suffers from the same deficiencies. What is more, a close reading of *Edokobi* reveals that it *does not involve* a fabrication claim based on the Fifth and Fourteenth Amendments' due process clauses. It concerns a Fourth Amendment challenge to an improper search. *See id.* at *4 (discussing challenge to "improprieties with the search warrant"); *id.* (citing *Triestman v. Probst*, 897 F. Supp. 48, 50 (N.D.N.Y. 1995)) (holding that claims challenging false claims in a search warrant accrue on date of search). Defendants BPD and Palmere's brief confirms that the rule they cite

applies not to the Fifth Amendment claims at issue, but to the "accrual of [] *Fourth Amendment claims*[.]*"* [4]  Defs. BPD & Palmere's Mot. at 9 (emphasis added).

Neither of the foregoing opinions bind the Court.  They are certainly not "dispositive," as Defendants claim.  *Id.* at 9.  In any event, applying *Heck*, *Wallace*, and *Owens*, Plaintiffs' § 1983 claim based on fabrication of evidence in criminal proceedings is most analogous to the tort of malicious prosecution.  For that reason, the limitations period for the claim began to run when those proceedings terminated in Plaintiffs' favor.  Because Plaintiffs brought their claims well within three years of that date, their § 1983 fabrication claim is timely.

As noted, Defendants incorrectly assume that the standard rule for accrual applies.  But *even if* that rule is applied to this case, Plaintiffs' fabrication claim is still timely.  Under the standard rule, accrual occurs when the plaintiff has "a complete and present cause of action." *Wallace*, 549 U.S. at 388.  Plaintiffs did not have a "complete and present cause of action" until their full acquittals, because, as the Supreme Court held in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), a criminal defendant (including one under supervision) may exclusively challenge his or her conviction through a petition for habeas corpus—not a § 1983 action.  Plaintiffs' fabrication claim is timely for the independent reason that the harm from the alleged constitutional violation did not end until their convictions were vacated.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982) (recognizing continuing violation doctrine).

The Fourth Circuit has also stated that the statute of limitations begins to run when "the plaintiff has, or ought to have, answers to two questions: Am I injured?  Who injured me?" *Childers Oil Co. v. Exxon Corp.*, 960 F.2d 1265, 1271 (4th Cir. 1992).  BPD and Mr. Palmere

---

[4] BPD and Palmere misattribute a quotation on page 9 of their brief to *Edokobi*.  The quote appears in *Dunigan v. Purkey*, Civil Action No. 2:17cv40, 2018 WL 4087564, at *9 (N.D.W. Va. July 25, 2018).

assert that the limitations period started to run on the date of the incident (April 28, 2010), because Plaintiffs were "[f]ully aware that the evidence against them was fabricated" on that date.  Defs. BPD & Palmere's Mot. at 7.

Not so.  The operative complaint states that "[w]hile both Plaintiffs knew that the heroin did not belong to them, because of the manner in which they were held after their arrest, they could neither hear the command to bring the heroin nor see the planting of the heroin."  Second Am. Compl. ¶ 251.  The complaint further alleges that it was not until June 2017, when a federal grand jury returned a superseding indictment against Mr. Jenkins and others, that they learned of Defendants' fabrication of evidence.  Plaintiffs therefore could not answer the second pertinent question—who injured them—until June 2017 at the earliest.[5]  Thus, even under the incorrect fact-intensive standard proposed by Defendants, they cannot carry their burden and Plaintiffs' fabrication claim is not barred.

Lastly, apart from being incorrect under the law, Defendants' position would create practical obstacles contrary to the interest in exposing wrongdoing by law enforcement officials. According to Defendants, Plaintiffs needed to bring their fabrication claim within three years of the incident.  In other words, Defendants assert that Mr. Burley and Mr. Matthews, while in prison for drug charges that the federal government now acknowledges they did not commit,

---

[5] Even *Lewis*, which employed the standard accrual rule, reinforces the timeliness of Plaintiffs' fabrication claim.  In that case, officers searched plaintiff's home in 1972.  In February 1978, she testified before a grand jury as part of an investigation into those officers.  While the court suggested that the limitations period began on the day of the search, it later stated in a footnote that "[t]he very latest date at which the cause of action could have accrued was February, 1978, when [plaintiff] testified before the Grand Jury.  At least by this time, she was aware of the identity of those officers who allegedly violated plaintiffs' civil rights by filing false affidavits." *Lewis*, 534 F. Supp. at 717 n.3; *see also Ying Li v. City of New York*, 246 F. Supp. 3d 578, 630 (S.D.N.Y. 2017) ("[T]he Court finds that the City Defendants have not established that Plaintiff knew all along that she had a *Brady* violation and fabrication of evidence claim simply because she believed in her innocence; the City Defendants' contrary assertion is too sweeping.").

were supposed to acquire counsel and prosecute their civil rights case against the officers.  In

practice, that is not feasible.  Adopting Defendants' unsupported position would preclude

plaintiffs from bringing meritorious § 1983 claims, and as a result, insulate and perhaps even

encourage local and state actors to fabricate evidence with impunity.

For all these reasons, Plaintiffs' § 1983 claim based on fabrication of evidence is timely.

### 2. Plaintiffs' § 1983 claim for malicious prosecution incorporates a "favorable termination" requirement and thus is timely.

Longstanding precedent forecloses Defendants' assertion that Plaintiffs' § 1983

malicious prosecution claim is time-barred.[6]  *See* Def. Guinn's Mot. at 3.  Over 20 years ago, in

*Brooks v. City of Winston-Salem*, *N.C.*, the Fourth Circuit explained that § 1983 claims "seeking

damages for unconstitutional arrest or confinement imposed pursuant to legal process" are most

analogous to malicious prosecution and thus "do not accrue until a favorable termination [of

criminal proceedings] is obtained."  85 F.3d 178, 183 (4th Cir. 1996); *see also Lambert*, 223 F.3d

at 262 n.3 (reaffirming rule).  In a recent opinion, the Supreme Court recognized that nearly all

circuits, including the Fourth Circuit, have held that a malicious prosecution claim is cognizable

under § 1983 and "have incorporated a 'favorable termination' element and so pegged the statute

of limitations to the dismissal of the criminal case."  *Manuel v. City of Joliet*, 137 S. Ct. 911, 918

& n.4 (2017) (citing *Lambert*, 223 F.3d at 260–62); *see also id.* at 921 & n.9.

In short, Plaintiffs' § 1983 malicious prosecution claim did not accrue until the criminal

proceedings against them terminated in their favor on the date their convictions were vacated.

The claim is therefore timely.

---

[6] A § 1983 claim for malicious prosecution is "properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000).

### 3. Because Plaintiffs' remaining federal claims derive from the underlying § 1983 claims, they are also timely.

Defendant BPD seeks to dismiss Plaintiffs' *Monell* claim, and Defendant Palmere seeks to dismiss the supervisory liability claim against him, as untimely.  But as the Fourth Circuit has explained, both claims are "derivative" of the underlying § 1983 claims.  *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012).  Because the predicate claims are timely, so too are Plaintiffs' *Monell* and supervisory liability claims.

BPD muddies the waters in addressing the *Monell* claim.  It discusses a § 1983 claim based on false arrest.  *See* Defs. BPD & Palmere's Mot. at 5–6.  But Plaintiffs have *not* alleged a false-arrest claim.[7]  As outlined earlier, and more importantly as reflected in the operative complaint, Plaintiffs bring three underlying § 1983 claims: (1) a claim based on withholding of exculpatory evidence; (2) a claim based on fabrication of evidence; and (3) a malicious prosecution claim.  Because those underlying claims are timely, and because Defendant BPD focuses on a non-existent claim for false arrest, the Court should reject its attempt to dismiss the *Monell* claim.

The other moving Defendants also seek dismissal of Plaintiffs' § 1983 failure to intervene and conspiracy claims.  Although there does not appear to be much case law on the accrual dates for these claims (Defendants provide none), the available decisions adopt the sensible position that those claims accrue on the same date as the underlying § 1983 claims.  *See*

---

[7] While Defendants assume that Plaintiffs brought a false-arrest claim, Plaintiffs in fact brought a malicious prosecution claim.  The two claims both arise under the Fourth Amendment but are distinct.  *See Heck*, 512 U.S. at 484 ("Unlike the related cause of action for false arrest and imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process."); *Lambert*, 223 F.3d at 261 (discussing Fourth Amendment basis for malicious prosecution claim).  Plaintiffs seek damages for the entirety of their unlawful incarceration, not just for the injuries suffered in pretrial detention.  As "master[s] of [their] complaint," *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005), Plaintiffs are free to decide the theory under which their claims will proceed.

14

*Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 797 (N.D. Ill. 2013) (finding § 1983

conspiracy claim barred where underlying due process claim was barred); *Hoskins v. Knox Cty.*,

No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *17 (E.D. Ky. Mar. 15, 2018) ("Logic and

common sense command that the same accrual date govern both the failure-to-intervene claim

and the underlying § 1983 claims . . . .").

### C. Defendants have waived their argument that Plaintiffs' state-law claims are time-barred.

Defendant Guinn's Motion asserts, in a single sentence, that Plaintiffs' state-law claims

(except for malicious prosecution) are time-barred.  Def. Guinn's Mot. at 4.  Such conclusory

assertions cannot sustain Defendants' burden of proving an affirmative defense at this stage.  *See*

*Goodman*, 494 F.3d at 464.  The Court should find Defendants' arguments waived.  *See Kinder*

*v. White*, 609 F. App'x 126, 132 (4th Cir. 2015) (noting that "fleeting mention of [an argument]

in a single sentence . . . is not an argument—it's an observation" and finding such arguments

waived) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006)); *see also*

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) ("A

party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that

issue.").

### D. Plaintiffs have properly stated claims for malicious prosecution, failure to intervene, and supervisory liability.

Defendants' assertions that Plaintiffs failed to state a claim for malicious prosecution

(Count VII), failure to intervene (Count III), and supervisory liability (Count X) are meritless.

#### 1. By alleging that Defendants Guinn, Gladstone, and Willard participated in the planting of heroin in Mr. Burley's car, Plaintiffs have properly stated a claim for malicious prosecution against those Defendants.

Defendants Guinn, Gladstone, and Willard seek dismissal of the state law malicious

prosecution claim by placing all blame on Defendant Jenkins.  *See* Def. Guinn's Mot. at 4.  But a

review of the elements of malicious prosecution and the facts alleged confirm that plaintiffs have adequately pleaded the claim.

In Maryland, the "elements of malicious prosecution are 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender of the justice; and 4) termination of the proceedings in favor of the plaintiff." *Heron v. Strader*, 361 Md. 258, 264 (2000). Defendants do not specify which element is not satisfied. This alone is fatal to their attempt at dismissal, as they carry the burden to show dismissal is warranted.

Plaintiffs have adequately pleaded all the elements. No dispute exists as to the first and last elements. As for the second and third elements, the first page of the complaint reads: "Finding nothing illegal in Mr. Burley's car, the Officers, joined by Sergeant Willard, planted heroin inside it . . . from a stash of drugs that the Officers carried with them for the purpose of framing innocent persons." Second Am. Compl. ¶ 4. As described, the complaint also alleges that prosecutors relied on the planted evidence to bring charges against Plaintiffs, and that the Officer Defendants, together with Sergeant Willard, intentionally withheld the fact that they planted drugs. Allegations that Defendants Guinn, Gladstone, and Willard participated in planting heroin to frame two innocent people and the cover-up that followed are more than sufficient to satisfy the applicable pleading standard as to acting without probable cause and with malice. *See DiPino v. Davis*, 354 Md. 18, 55 (1999) (explaining that malice "means that the defendant 'was actuated by an improper motive'") (quoting *Montgomery Ward v. Wilson*, 339 Md. 701, 719 (1995)); *id.* at 28 (framing probable cause inquiry as whether police officer had probable cause for arrest).

16

### 2. Defendants mistakenly seek to add a physical presence requirement to a § 1983 claim for failure to intervene.

Defendant Palmere argues that Plaintiffs failed to properly plead a claim for failure to intervene.  To establish a failure to intervene claim, a plaintiff must show that the defendant "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002).

Mr. Palmere primarily argues that he cannot be liable under this theory because "there is *no allegation that Palmere was present* when the Defendant Officers planted drugs, falsified reports or otherwise committed a tort against Plaintiffs."  Defs. BPD & Palmere's Mot. at 15 (emphasis added).  Physical presence, however, is not required under Fourth Circuit law.  *See Randall*, 302 F.3d at 204.

Mr. Palmere raises no substantial challenge to the failure to intervene claim beyond the misguided "physical presence" argument.  Plaintiffs should not be forced to defend their claim on grounds not raised by Defendants.  *See supra* Part II.C.  In any event, Plaintiffs have adequately alleged Mr. Palmere's knowledge of the misconduct, both with respect to the officers involved and their actions that led to Plaintiffs' incarceration, Second Am. Compl. ¶¶ 31, 140, 133–153, yet he failed to act despite his knowledge and ability to do so.

### 3. Because Defendants misunderstand Plaintiffs' claims for supervisory liability as asserting a theory of respondeat superior, their attempt at dismissal fails.

Defendants misunderstand the supervisory liability claims asserted against Messrs. Palmere, Knoerlein, and Fries.[8]  They cite decisions reflecting the noncontroversial proposition

---

[8] Plaintiffs also bring the claim of supervisory liability (Count V) against Defendant Willard*, see* Second Am. Compl., ECF No. 23, at p. 51, but Defendant Willard did not move to dismiss the claim, *see* Def. Guinn's Mot. at 4 (referring only to Defendants Knoerlein and Fries).

that supervisors may not be held liable under a theory of *respondeat superior*.  *See* Defs. BPD &

Palmere's Mot. at 15.  Plaintiffs have not asserted their claims under that theory but instead

under the distinct theory of supervisory liability as recognized by the Fourth Circuit.  *See Slakan*

*v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) ("Liability in this context is not premised on

*respondeat superior* . . . but on a recognition that supervisory indifference or tacit authorization

of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict

on those committed to their care.").

> To establish supervisory liability, a plaintiff must establish:
>
> (1) that the supervisor had actual or constructive knowledge that h[is] subordinate
>     was engaged in conduct that posed "a pervasive and unreasonable risk" of
>     constitutional injury to citizens like the plaintiff;
>
> (2)  that the supervisor's response to that knowledge was so inadequate as to show
>     "deliberate indifference to or tacit authorization of the alleged offensive
>     practices,"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction
>     and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791,

799 (4th Cir. 1994)).  Under this theory, a supervisor "is obligated, when on notice of a

subordinate's tendency to act outside the law, to take steps to prevent such activity.  If a

supervisory law officer is deliberately indifferent to that responsibility, he then bears some

culpability for illegal conduct by his subordinates . . . ."  *Randall*, 302 F.3d at 203.

Mr. Palmere contends that he cannot be held "vicariously liable and cannot be sued under

a theory of *respondeat superior*."  Defs. BPD & Palmere's Mot. at 15; *see also* Def. Guinn's

Mot. at 4 (Defendants Knoerlein and Fries adopting same argument).  While true, this argument

misses the point, as Plaintiffs do not seek to hold him liable under either theory  So, too, does his

argument that he was not "personally involved" in the deprivation of Plaintiffs' constitutional rights.  Defs. BPD & Palmere's Mot. at 15.

Notably, neither Mr. Palmere nor any of the other defendants has challenged the *factual* sufficiency of Plaintiffs' claims for supervisory liability.  *See supra* Part II.C.  They apparently concede that the operative complaint is replete with facts to state a claim for supervisory liability as to Defendants Palmere, Knoerlein, and Fries.  *See, e.g.*, Second Am. Compl. ¶¶ 102-153 (outlining the supervisors' deliberate indifference to numerous allegations of pervasive misconduct within plainclothes units, including the specific misconduct by officers named in the complaint, *id.* ¶¶ 33–101).

Taking these and the other allegations as true and drawing all inferences in Plaintiffs' favor, the operative complaint more than adequately alleges that Defendants Palmere's, Knoerlein's, and Fries' deliberate indifference resulted in the multiple constitutional violations suffered by Plaintiffs.  *See, e.g.*, *Kemp v. Harris*, No. WDQ-08-793, 2008 WL 11363697 at *6 (D. Md. Nov. 12, 2008) (finding allegations of supervisory liability sufficient).

### E.  Plaintiffs have properly stated a § 1983 claim based on a *Brady* violation.

Defendants next seek dismissal of Plaintiffs' § 1983 claim based on a *Brady* violation, but once again, their position rests on a selective recitation of the relevant facts and case law.

### 1.  In seeking to dismiss Plaintiffs' § 1983 *Brady* claim, Defendants refuse to accept the facts alleged in the complaint as true.

Defendants proclaim in passing that *Brady* "does not apply because Plaintiffs possessed the exculpatory evidence."  Defs. BPD & Palmere's Mot. at 10.  This argument fails as it did before: Plaintiffs' allegation that they did not know who planted the heroin and thus did not possess the exculpatory evidence must be accepted as true at this stage of the proceedings.  The same is true of the allegation that Plaintiffs were unaware that the Officer Defendants and

19

Sergeant Willard intentionally withheld this information from Plaintiffs.  As much as they wish otherwise, Defendants cannot make the opposite true.

> **2. Defendants' sweeping contention that *Brady* does not apply before trial conflicts with Fourth Circuit precedent and would eviscerate a fundamental due process protection for criminal defendants.**

Defendants next argue that *Brady* applies only at trial, not in the context of guilty pleas. *Id.* at 11.  But Defendants fail to discuss meaningfully the leading Fourth Circuit decision, ignore key Supreme Court precedent, rely on inapposite decisions, and do not consider the consequences of the categorical rule they propose.

> **a. Defendants ignore the Fourth Circuit's decision in *Fisher*, which recognizes that individuals have due process rights during the plea stage and thus supports Plaintiffs' claim.**

Defendants relegate to a one-sentence footnote their discussion of *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), a binding decision that speaks most directly to the question at hand.  There, the Fourth Circuit held that the "belated disclosure" of a police officer's lies— misconduct that induced a criminal defendant to plead guilty—violated his due process rights. *Id.* at 464.  As a result, the Fourth Circuit took the rare step of vacating a guilty plea.

The facts in *Fisher* are analogous to those here.  Mr. Fisher, who had pleaded guilty to federal charges, sought to withdraw his guilty plea based on the misconduct of a police officer involved in his case.  The officer, a Baltimore City Drug Enforcement Agency Task Force Officer, "falsely testified in his sworn search warrant affidavit" that a confidential informant had informed the officer that Mr. Fisher was involved in drug activity.  *Id.* at 466.  The officer secured a warrant to search Mr. Fisher's home, and in the resulting search, found evidence that supported criminal charges.  *Id.*  Mr. Fisher pleaded guilty.  Over a year later, the officer himself pleaded guilty to criminal charges and "admitted that the confidential informant he identified in

his affidavit had no connection to the case." *Id.* at 466 (internal citations and quotations omitted).

Based on these facts, the Fourth Circuit held that "a law enforcement officer intentionally lying in a[n] affidavit that formed the sole basis for searching the defendant's home" rendered Mr. Fisher's "plea involuntary and *violated his due process rights*." *Id.* at 469 (emphasis added). The majority found that Mr. Fisher sought to withdraw his plea due to "an affirmative government misrepresentation that strikes at the integrity of the prosecution as a whole." *Id.* (internal citations and quotation omitted).  Because there was a reasonable probability that, but for the officer's misconduct and the government's misrepresentations, Mr. Fisher would not have pleaded guilty, the Fourth Circuit vacated Mr. Fisher's plea agreement. *Id.* at 469.

The Fourth Circuit recognized that disclosure of information about an officer's misconduct is critical in shaping a criminal defense attorney's assessment of a case, and in turn, a defendant's decision whether to plead guilty. *See Fisher*, 711 F.3d at 466 (quoting *Brady v. United States*, 397 U.S. 742, 756 (1970)) ("Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him . . . ."); *id.* (noting that Mr. Fisher's defense counsel believed government's case to be a "strong one" and advised him to plead guilty).  Defendants' contention that accepting a guilty plea eliminates an individual's due process rights therefore conflicts with *Fisher*.  Like Mr. Fisher, Plaintiffs would have never pleaded guilty had the officers' misconduct and lies been disclosed. *See id.* at 466–68.  Disclosure of this information would have destroyed the criminal case against Plaintiffs; the prosecutors would have dismissed it at once.

Defendants fail to engage, let alone distinguish, this binding precedent.  *Fisher* should control the analysis here.  Its holding that Mr. Fisher's pre-plea due process rights were violated

21

confirms that individuals possess pre-plea due process rights.  At a minimum, *Fisher* establishes that (1) Plaintiffs possessed rights grounded in the Due Process Clause *before* their respective plea agreements, and (2) by entering a guilty plea, they did not lose those rights.  Given *Fisher's* recognition of pre-plea due process rights, an individual should be able to bring a § 1983 claim asserting a violation of those due process rights.  After all, § 1983 is not a source of substantive rights but a vehicle by which a plaintiff can bring suit against state actors for deprivations of federal and constitutional rights.[9]  *Albright v. Oliver*, 510 U.S. 266 (1994)

*Fisher* grounds its due process analysis in *Brady v. United States*, 397 U.S. 741 (1970), not *Brady v. Maryland*, 373 U.S. 83 (1963), but the line between the two is non-existent here. The government's nondisclosure of exculpatory evidence under the latter is indistinguishable from government misrepresentation of evidence that renders a plea involuntary under the former.[10]  As Defendants themselves recognize, *Fisher* concerns the omission of "*exculpatory* information." Defs. BPD & Palmere's Mot. at 12 n.6 (emphasis added).  And *Fisher* itself quotes the recognition in *Sanchez* that "if a defendant may not raise a *Brady* [*v. Maryland*] claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory evidence information as part of an attempt to elicit guilty pleas." *Id.* at 469 (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)).  The language and logic of *Fisher* support a finding that Plaintiffs had pre-plea due process rights under *Brady v. Maryland*.

---

[9] Such a claim is presently encompassed in the existing "Violation of Due Process" claim (Count I).  If the Court finds otherwise, Plaintiffs respectfully request leave to amend to add such a due process claim.

[10] This is link is recognized in *Fisher*, as it relies heavily on *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006), a decision holding that the government's failure to disclose *exculpatory* information to a defendant before he entered a plea rendered his plea involuntary.  As *Ferrara* points out, the two *Brady* decisions employ the identical "reasonable probability" standard for determining prejudice.  *See id.* at 294 n.12.

Indeed, Mr. Burley's and Mr. Matthews' actual innocence makes this case far stronger than *Fisher*, providing further support for Plaintiffs' claim. *Fisher* did not involve a claim for actual innocence. *Id.* at 467. Not only does Plaintiffs' case present "highly uncommon circumstances in which gross police misconduct goes to the heart of the prosecution's case," *Fisher*, 711 F.3d at 466, it centers on allegations that BPD officers planted heroin to frame two innocent men (as confirmed by the United States Attorney's Office). Plaintiffs' confirmed factual innocence implicates the principle at the heart of *Brady v. Maryland*: minimizing the risk of sending innocent people to prison. Even the *Fisher* dissent notes agreement with decisions holding that suppressing exculpatory evidence of actual innocence is so extreme that it compels withdrawal of guilty pleas. *See Fisher*, 711 F.3d at 477 (Agee, J., dissenting) (stating that courts "quite appropriately" focus on whether suppressed evidence goes to guilt or innocence and suggesting *Ferrara v. United States*, 456 F.3d 278, 291 (1st Cir. 2006), was properly decided because it involved "exculpatory evidence of [] actual innocence").

### b. Defendants ignore Supreme Court decisions recognizing that criminal defendants' due process and trial rights are not limited to trial.

In addition to overlooking *Fisher*, Defendants ignore historical and recent Supreme Court precedent. A return to first principles via a review of *Brady v. Maryland* counsels against adopting Defendants' absolute (and narrow) position that the right it established applies only at trial. *Brady* itself concerned the punishment stage, as the undisclosed evidence required only a new sentencing—*not a new trial*. *See* 373 U.S. at 90–91 (referring to bifurcated trial); *Poventud v. City of New York*, 750 F.3d 121, 137 (2d Cir. 2014) ("In *Brady*, the Court held that Maryland violated the defendant's constitutional rights by withholding evidence *relevant to his sentencing* . . . .") (emphasis added); *see also id.* at 136 (finding plaintiff's § 1983 claim consistent with guilty plea). That *Brady*, from the very beginning, applied to a situation other than trial is

23

compelling evidence that it is not limited to trial. *Brady*'s application outside trial makes sense

when one considers that it is a due process right. *Brady*, 373 U.S. at 87; *Owens*, 767 F.3d at 396.

An individual's due process rights do not magically activate only during the trial phrase, but

provide protection *throughout* a criminal proceeding.[11]  *See, e.g.*, *United States v. Barfield*, 969

F.2d 1554, 1556 (4th Cir. 1992) (recognizing due process right to be present at pretrial hearing).

The Supreme Court articulated this logic in *Lafler v. Cooper*, 566 U.S. 156 (2012), a

recent decision that further supports a pre-plea *Brady* right.  There, it rejected the petitioner's and

Solicitor General's argument that attorney errors before trial are "not cognizable under the Sixth

Amendment unless they affect the fairness of the trial itself." *Lafler v. Cooper*, 566 U.S. 156,

165 (2012).  Even though the language of the Sixth Amendment expressly concerns *trials*, the

Supreme Court explained that the Amendment "is not so narrow in its reach . . . Its protections

are not designed simply to protect the trial . . . ." *Id.*  The Supreme Court found support in the

fact that, among other things, the Sixth Amendment right applied at sentencing—and therefore

not just trial. *Id.* at 165.  The same is true of the *Brady* right. *See discussion supra*; *see also*

*Lafler*, 566 U.S. at 163 (applying same prejudice standard as *Brady* prejudice standard).

*Lafler* is also grounded in the "reality that criminal justice today is for the most part a

system of pleas, not a system of trials." *Lafler*, 566 U.S. at 170.  Ninety-seven percent of federal

criminal convictions, as highlighted by the Supreme Court, result from plea agreements. *Id.*

(citing Dept. of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics

Online, Table 5.22.2009, available at  http://www.albany.edu/sourcebook/pdf/t5222009.pdf).  It

concluded that "the right to adequate assistance of counsel cannot be defined or enforced without

---

[11] For this reason, courts have allowed individuals detained *pretrial* to bring § 1983 claims based on *Brady* violations.  *See Ying Li*, 246 F. Supp. at 626 (emphasis added) ("A plaintiff need not have gone to a full trial on the merits in order to have an actionable Section 1983 claim based on the denial of a fair trial.").

taking account of the central role bargaining plays in securing convictions and determining

sentences." *Id.* at 170.  Given our system of pleas, if *Brady* applied only in the rare instance of

trial, its right would almost cease to exist.  Faithfully applying Supreme Court precedent, recent

state and federal district courts in this Circuit (and others) have expressly relied on *Lafler* in

holding that defendants have a due process right to pre-plea disclosure of exculpatory evidence.

*See, e.g.*, *Buffey v. Ballard*, 236 W. Va. 509, 517 (2015); *United States v. Cureton*, Docket No.

3:14-cr-00229-MOC, 2016 WL 755648, at *2 (W.D.N.C. Feb. 25, 2016).

### c.  Defendants' reliance on *Ruiz* and *Moussaoui* is misplaced.

Rather than engage with the recent *Fisher* and *Lafler* decisions, Defendants cite the older

decisions in *Ruiz v. United States*, 536 U.S. 622, 625 (2002), and *United States v. Moussaoui*,

591 F.3d 263 (4th Cir. 2010), neither of which alter the outcome.  In *Ruiz*, the Supreme Court

held that the Due Process Clause did not require the pre-guilty plea disclosure of impeachment

evidence.  *Id.* at 629.  The Supreme Court limited its holding to impeachment evidence—it did

not reach *exculpatory* evidence.  *Id.* at 631, 633.  This distinction is critical.  By its nature,

impeachment information generally only has value in the context of trial.  Exculpatory

information, by contrast, provides value before trial, such as during deliberations of whether to

plead guilty.  *See State v. Huebler*, 128 Nev. 192, 201 (2012) (contrasting impeachment and

exculpatory information and explaining that the latter "is special not just in relation to the

fairness of trial but also in relation to whether a guilty plea is valid and accurate.").  Given that

*Ruiz* "indicates a significant distinction between impeachment and exculpatory evidence of

actual innocence . . . it is highly likely that the Supreme Court would find a violation of the Due

Process Clause if prosecutors or other relevant government actors have knowledge of a criminal

defendant's factual innocence but fail to disclose such information to a defendant before he

enters a guilty plea." *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003). *Ruiz* thus does not diminish *Fisher*.

For three reasons, Defendants' reliance on *Moussaoui* is likewise unavailing. First, *Moussaoui* expressly declined to decide whether there was an obligation to disclose exculpatory evidence at the plea stage.[12] *See Moussaoui*, 591 F.3d at 286 (calling question a "close call" and declining to answer it). Second, the case did not involve the suppression of exculpatory evidence. *Id.* at 287 ("Thus, unlike in the traditional *Brady* context . . . the Government did not suppress favorable evidence from the defense, much less evidence of factual innocence. On the contrary, the Government *produced* the evidence . . . .") (emphasis in original). Third, the Fourth Circuit cabined its analysis to the particular facts of Mr. Moussaoui's case. *See id.* at 286 ("Moussaoui cannot demonstrate that *his* guilty plea was entered unknowingly for this reason.").

Despite having the full benefit of *Moussaoui*, the *Fisher* majority found a violation of Mr. Fisher's rights. *See Buffey*, 236 W.Va. at 521 (noting that *Fisher* signaled a "markedly different approach" than *Moussaoui*). In comparing the two decisions, *Fisher* not only more directly answers the pertinent question but does so in a case remarkably similar to this one.

---

[12] Defendants contend that *Moussaoui*'s statement that *Brady* is a "trial right" resolves whether there is pre-plea right to exculpatory evidence in their favor. Defs. BPD & Palmere's Mot. at 12. Not so. Defendants cannot interpret *Moussaoui* to establish a rule that it *expressly declined* to adopt. *See* 591 F.3d at 286. "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012). And Defendants do not and cannot reconcile their interpretation of *Moussaoui* with *Fisher* or *Lafler*, the latter of which held that a right under the Sixth Amendment—which pertains to *trial*—applies during plea bargaining. *See Buffey*, 236 W. Va. at 517 ("The Supreme Court's observations concerning the importance of plea negotiations in *Lafler* suggest that the assertion that *Brady* is a 'trial right' will not preclude it from being applied during plea bargaining.") (quotation omitted).

**d. The obligations that prosecutors owe to criminal defendants—including specifically to Mr. Burley and Mr. Matthews—further confirms the availability of Plaintiffs' claim.**

Beyond case law of the Supreme Court and this Circuit, the very obligations that prosecutors owe to criminal defendants, courts, and our judicial system support the existence of a pre-plea right to exculpatory information.  Criminal defendants require access to exculpatory information to evaluate whether to enter guilty pleas.  By the same token, prosecutors have an ethical obligation to review and assess available information of an individual's innocence before satisfying themselves of that individual's guilt.  *See* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 09-454 (2009) ("Because the defendant's decision [to plead guilty] may be strongly influenced by defense counsel's evaluation of the strength of the prosecution's case, timely disclosure requires the prosecutor to disclose [exculpatory] evidence and information covered by Rule 3.8(d) prior to a guilty plea proceedings . . . ."); *see also Missouri v. Frye*, 566 U.S. 134, 145 (2012) (looking to ABA standards); *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (recognizing that our system imbues prosecutors with a "special role . . . in the search of truth").

Defendants neglect to mention the specific agreement between the government and criminal defense counsel for Mr. Burley and Mr. Matthews in their criminal cases.  Both Mr. Burley and Mr. Matthews, through criminal defense counsel, signed the discovery letter offered by the Special Assistant United States Attorney, in which the government agreed that "*Brady* material which is not otherwise included in the Rule 16, *Jencks* or *Giglio* material referred to above *will be provided if and when discovered*."  *See United States v. Burley*, *et al.*, Case No. 14-CR-00412-CCB (D. Md), Dkts. 24–25 (emphasis added).  Nor do Defendants mention that Mr. Burley's criminal defense attorney requested that the government provide *Brady* material for use

27

during *pretrial* hearings.  *See id.*, ECF No. 46.  Thus, in *this* case, the federal prosecutors agreed to disclose *Brady* material to Mr. Burley and Mr. Matthews before trial.  *See Ruiz*, 536 U.S. at 631 (analyzing specific evidentiary agreement between defendant and government); *see also Fisher*, 711 F.3d at 465 (same).  Defendants' narrow view that *Brady* applies only at trial is not only untenable but inconsistent with the facts.

Lastly, Defendants fail to appreciate the practical effects of limiting *Brady's* application to trial.  The position advanced by Defendants would exacerbate the disparity in bargaining power between prosecutors and defendants by allowing prosecutors to draw defendants into plea agreements with evidence of their guilt, while withholding evidence of their innocence.  It may also make officers "more likely to *conceal* [evidence] to help elicit guilty pleas."  *Fisher*, 711 F.3d at 469 (emphasis added).

Many defendants, like Mr. Burley and Mr. Matthews, unaware of mitigating evidence and fearing the uncertainty of trial, accept plea deals in spite of their innocence.  According to a 2015 report by the National Registry of Exonerations, 15 percent of all known exonerees originally pleaded guilty.  *See* National Registry of Exonerations, *Innocents Who Plead Guilty*, available at http://www.law.umich.edu/special/exoneration/Documents/NRE.Guilty.Plea. Article1.pdf; *see also* John H. Blume & Rebecca K. Helm, *The Unexonerated: Factually Innocent Defendants Who Plead Guilty*, 100 Cornell L. Rev. 157 (2014).  That figure skyrockets to 66 percent for those exonerated of drug crimes.  *Id.*  The principles that animate *Brady*— fairness to the accused and the administration of justice over victory—cannot support Defendants' position, which would further enable convictions of the innocent.

**F. Dismissal of Plaintiffs' indemnification claims would be premature and wasteful of judicial resources.**

BPD seeks dismissal of both indemnification counts (Counts XII and XIII).[13]  In support of its motion, BPD claims that since a judgment has not yet been entered against the individual officer Defendants, Plaintiffs do not have standing to pursue claims for indemnification against BPD.  Under the particular circumstances of this case, however, Plaintiffs have a significant likelihood of success against the individual officer Defendants, much more so than a typical § 1983 case.  BPD's blanket argument that indemnification claims are always premature does not withstand scrutiny.

The Local Government Tort Claims Act ("LGTCA") holds local entities, including the BPD, liable for tortious acts or omissions committed by an employee within the scope of that employee's employment.  *See* Md. Code Ann., Cts. & Jud. Proc. §§ 5-302(b)(1), 5-303(b)(1).  "[S]cope-of-employment . . . is a fact-intensive inquiry that takes into account the many, sometimes nonobvious, ways that an employee can advance his employer's interests."  *Day v. Robbins*, 179 F. Supp. 3d 538, 542 (D. Md. 2016).  When "read in context with the rest of the statute, the local government's obligation under § 5-303(b)(1) unambiguously runs *directly* to the underlying plaintiff."  *Johnson v. Francis*, 239 Md. App. 530, 551 (2018) (emphasis added).

Here, unlike the cases cited by BPD, Plaintiffs have not only brought claims against BPD officers, but also a separate *Monell* claim against BPD directly.  Specifically, BPD relies on cases involving claims against BPD under an *indirect* liability claim*, i.e.,* vicarious liability theories.  *See, e.g.*, *Baltimore Police Dep't. v. Cherkes,* 140 Md. App. 282 (2011) (holding that "no liability ordinarily attaches to [BPD] under the doctrine of respondeat superior for the torts

---

[13] Apart from arguing that the state-law claims are time-barred, *see supra* Part II.C, Defendant Guinn's Motion does not seek to dismiss the indemnification count against the Officer Defendants (Count XIII).

of [BPD] officers acting within the scope of employment."); *Williams v. Prince George's Cty.*, 112 Md. App. 526 (1996) (dismissing local government because plaintiff did not bring a direct claim against the local government, but rather through the theory of *respondeat superior*). Irrespective of the indemnification claims, BPD will remain a party in the trial to defend against *Monell* liability, and it follows that unnecessary resources would be expended for all involved to have two trials with BPD with the same underlying facts.

Relatedly, the facts necessary to prove the constitutional claims against the individual officer defendants, especially those named in the BPD supervisory liability count, are the same facts that will be presented to prove *Monell* liability claim against BPD directly.  And these facts also speak to whether the individual Defendants acted within the scope of their employment.[14] Put differently, the issue of whether BPD and supervisors condoned the misconduct of the individual officers will in large part answer the question of whether those officers acted within the scope of their employment.  Given the factual overlap between the existing claims and the indemnification claim, dismissal of the fact-intensive indemnification would be inefficient and improper at this stage.  Because BPD will remain in the case as an independent party to defend against the *Monell* claim, simultaneous litigation of the indemnification claims will streamline discovery and likely lead to a more efficient resolution.

---

[14] The Second Amended Complaint alleges, among other things, that: (1) the BPD and its supervisors had knowledge of broad authority given to plainclothes units, Second Am. Compl. ¶ 33; (2) BPD knew and condoned the officers' misconduct, *id*. ¶ 34; (3) BPD employed "elite units" who conducted themselves unlawfully, *id.* ¶¶ 36–42; (4) BPD acknowledged that internal investigations into officers' conducts were necessary, *id.* ¶ 49; and (5) BPD's knowledge and lack of concern for Defendant Jenkins' illegal conduct, *id.* ¶ 80.  The question of whether the Officer Defendants were acting within the scope of their employment pursuant to the LGTCA will be answered contemporaneously with the question of whether the Officer Defendants and the BPD are directly liable under the respective causes of action.

Moreover, BPD's indemnification argument incorrectly assumes that Plaintiffs will fail to establish constitutional violations against any individual Defendant.  But, unlike other cases, the evidence of the individual Defendants' wrongdoing is already overwhelming and irrefutable. Defendant Jenkins not only pleaded guilty to racketeering and related charges, but he *specifically admitted* in his plea agreement that he violated the constitutional rights of Plaintiffs among other things.  *See* Second Am. Compl. ¶ 100.  A separate trial to prove what has already been established (beyond a reasonable doubt) is unnecessary, and judicially and economically wasteful.[15]  A court in this District recently employed similar logic in denying bifurcation of a plaintiff's claims in case involving some of the same officers.  *See Potts v. Hendrix*, 16-cv-03187-TDC (D. Md. Dec. 7, 2018), ECF No. 84 (denying bifurcation and explaining that a single discovery period and a single trial is more efficient as "there is a significant likelihood that [plaintiff] will be able to establish liability against one or more Police Officer Defendants.").[16]

For these reasons, dismissal of both Counts XII and XIII is improper.  Though Count XIII seeks indemnification of the state court judgment against Mr. Burley, it is derivative of his argument in opposition to the dismissal of Count XII.[17]  While Plaintiffs agree that BPD is

---

[15] *See Rubio v. Cnty. of Suffolk*, No. 01-CV-1806 (TCP), 2007 WL 2993830, at *3 (E.D.N.Y. Oct. 9, 2007) (finding "by virtue of his guilty plea defendant [police officer] is estopped from challenging causation and injury" of plaintiffs' § 1983 claim").

[16] BPD's recent cross-claim for indemnification against individual officers *before* a final judgment has been entered in a related case (not to mention its declaratory judgment action concerning indemnification, *see* BPD & Palmere's Mot. at 17 n.7) undermines its current contention that Plaintiffs' pre-judgment indemnification claim is premature.  *See, e.g., Roberts v. Baltimore City Police Dep't*, Case No. 18-cv-01940-CCB (D. Md. Nov. 21, 2018), ECF No. 25 (BPD asserting indemnification cross-claim against individual officers).

[17] Defendants raise a notice argument with respect to Count XIII, but it does not preclude Plaintiffs' claim because Defendants had adequate notice.  The requirement for notice within one year after injury does not apply if BPD "has actual or constructive notice of: (1) [t]he claimant's injury; or (2) [t]he defect or circumstances giving rise to the claimant's injury."  Md. Code Ann. Cts. & Jud. Proc. §§ 5-304(3).  The entirety of Plaintiffs' Second Amended Complaint rests on the theory that Defendants knowingly conducted themselves in an unlawful manner, resulting in

entitled to the protection of sovereign immunity (though the Officer Defendants are not), should

the Officer Defendants be required to indemnify Mr. Burley for the state judgment against him—

as a result of their wrongful actions which resulted in the judgment—BPD will in turn be

required to indemnify Mr. Burley for the Officer Defendants' bad acts.

At a minimum, it is premature to conclude that dismissal of the indemnification claims

would advance judicial economy, and Plaintiffs alternatively request that the Court decline to

reach the issue at this stage. *See, e.g.*, *Bost v. Wexford Health Sources, Inc.*, Civil Action No.

ELH-15-3278, at \*57 (D. Md. July 23, 2018) (declining to reach the indemnification issues prior

to judgment); *Home Exterminating Co., Inc. v. Zurich-American Ins. Group*, 921 F. Supp. 3d

318, 325 n.7 (D. Md. 1996) (same).

## IV.    CONCLUSION

Mr. Burley and Mr. Matthews spent years in prison as the result of Defendants' planting

of heroin and related misconduct.  They should now be permitted the opportunity to vindicate

their civil rights.

For all the foregoing reasons, the Court should deny Defendants Baltimore Police

Department and Dean Palmere's and Defendants Guinn, Gladstone, Willard, Knoerlein, and

Fries' respective motions to dismiss.

---

Plaintiffs' subsequent arrests and convictions.  And all parties were put on notice of Defendants officers' unlawful conduct after the June 22, 2017, federal grand jury indictment.  *See* ECF No. 23 at 45–46.  In fact, BPD has filed its own declaratory judgment lawsuit against officers in anticipation of damages arising out of the unlawful misconduct of its officers.  ECF No. 29-2 at 17 n.7.  These facts are more than adequate to establish BPD's "actual or constructive notice" of Plaintiffs' injuries and the "circumstances giving rise" to Plaintiffs' injuries.  Md. Code Ann. Cts. & Jud. Proc. § 5-304(3).

Dated: March 1, 2019

Respectfully submitted,


     /s/                                              /s/

Steven D. Silverman, Esq. (Bar No. 22887)       Andrew D. Freeman (Bar No. 03867)
ssilverman@mdattorney.com                           adf@browngold.com
Andrew C. White, Esq. (Bar No. 08821)         Joshua R. Treem (Bar No. 00037)
awhite@mdattorney.com                               jtreem@browngold.com
William N. Sinclair, Esq. (Bar No. 28833)       Chelsea J. Crawford (Bar No. 19155)
bsinclair@mdattorney.com                           ccrawford@browngold.com
Erin Murphy, Esq. (Bar No. 24980)             Neel K. Lalchandani (Bar No. 20291)
emurphy@mdattorney.com                            nlalchandani@browngold.com
SILVERMAN|THOMPSON|SLUTKIN|WHITE,     Brown, Goldstein & Levy, LLP
LLC                                            120 E. Baltimore Street, Suite 1700
201 N. Charles Street, Suite 2600             Baltimore, Maryland 21201
Baltimore, Maryland 21201                   Tel: (410) 962-1030
Tel: (410) 385-2225                             Fax: (410) 385-0869
Fax: (410) 547-2432

*Attorneys for Plaintiffs Umar Hassan Burley and*
*Brent Andre Matthews*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 1, 2019, a copy of the foregoing Plaintiffs Umar Burley and Brent Matthews' Consolidated Response in Opposition to Defendants Baltimore Police Department and Dean Palmere's Motion to Dismiss and Defendants Guinn, Gladstone, Willard, Knoerlein, and Fries' Motion to Dismiss was electronically filed via CM/ECF, with notice to all counsel.

_____/s/_____

Neel K. Lalchandani
